FILED

2012 Sep-26  PM 01:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KAREN M. LEE, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 5:11-CV-2315-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.      Introduction.

The plaintiff, Karen M. Lee, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Lee timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Lee was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision on remand[1], and she has a General Equivalency Diploma ("GED") and a certificate of completion as a pharmacy technician. (Tr. at 158.) Her past work experiences include employment as a nurse assistant and scheduling clerk. (Doc. 7 at 1.) Ms. Lee claims that she became disabled on September 15, 2005, due to bipolar disorder, depression, and anxiety. (Tr. at 251.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record.

---

[1] The ALJ denied benefits on January 22, 2009. The Appeals Council remanded the case to the ALJ, and the ALJ issued his decision upon remand on August 6, 2010. After the Appeals Council denied Plaintiff's request for review, Plaintiff appealed to this Court.

*See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Lee met the insured status requirements of the Social Security Act through June 30, 2006, but not thereafter.  (Tr. at 21.)  He further determined that Ms. Lee has not engaged in substantial gainful activity since the alleged onset of her disability.  (*Id.* at 22.) According to the ALJ, Plaintiff's bipolar disorder, depression, generalized anxiety disorder, personality disorder, nicotine addiction, history of alcohol and marijuana abuse in remission, panic disorder with agoraphobia, mixed obsessive compulsive disorder, and insomnia are considered "severe" based on the requirements set forth in the regulations.  (*Id.* at 22.)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (*Id.*)  The ALJ did not find Ms. Lee's allegations to be totally credible. (*Id.* at 25.) He determined that she has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [S]he is restricted to jobs that are low-stress, defined by SVP-2 or less involving only simple work-related decisions; with normal breaks, she can concentrate for two-hour periods across an eight-hour workday; she is restricted from production pace work; she should have no contact with the general public and only occasional contact with coworkers and supervisors; she is capable of working independently with others; and work should be performed in an isolated workstation.

(*Id*. at 23.)

According to the ALJ, Ms. Lee is unable to perform any of her past relevant work, she is a "younger individual," and she has a "at least a high school education," as those terms are defined by the regulations. (Tr. at 31.)  He determined that transferability of job skills is not material to the determination of disability. (*Id*.)  The ALJ noted that Plaintiff's ability to perform work at all exertional levels has been compromised by her nonexertional limitations. (*Id*.)  As such, a vocational expert testified that a hypothetical individual with Plaintiff's age, education, work experience, and RFC would be able to perform unskilled employment at light levels. (*Id*. at 32.)  The ALJ then used Medical-Vocation Rule 204.00 as a guideline for finding that there is a significant number of jobs in the national economy that Plaintiff is capable of performing, such as machine tender, hand packager, and garment folder. (*Id*.)  The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from the date of September, 17, 2005, through the date of this decision." (*Id*.)

II.  Standard of Review.

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."   *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to

apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748

F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Plaintiff alleges that the ALJ's decision should be reversed and remanded for

two reasons.  First, she believes that the ALJ failed to give substantial weight to the

opinions of her treating physicians, basing his decision on personal opinion and

presumptive subjective judgments rather than substantial evidence.  (Doc. 7 at 7.)

Second, Plaintiff contends that the ALJ incorrectly found that her impairments did not

meet or equal Listing 12.08, 20 C.F. R. § 404, Subpart P, Appendix 1.  (*Id.* at 18.)

A.    Treating Physicians' Diagnoses.

Plaintiff contends that the ALJ improperly evaluated her treating physicians'

opinions.  (Doc. 7 at 7.)  A treating physician's testimony is entitled to "substantial

or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v.*

*Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The

weight to be afforded a medical opinion regarding the nature and severity of a

claimant's impairments depends, among other things, upon the examining and

treating relationship the medical source had with the claimant, the evidence the

medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*,

125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity.  *See, e.g.,* 20 C.F.R. § 404.1546(c).

Plaintiff saw several health care professionals between September 29, 2005, and the date of the ALJ's decision. (Doc. 7 at 7-18.) Of those professionals, Plaintiff refers to Drs. Lindsey, Doody, and Yedla as her "treating psychiatrist[s]." (*Id.* at 13, 17.) She refers to Dr. Vargas as a "non-treating physician." (*Id.* at 13.) The ALJ did not give great weight to Dr. Lindsey's opinions, and he gave no weight to Dr. Yedla's opinions. (Tr. at 28-30.) He gave substantial weight, however, to the opinions of Drs. Doody and Vargas. (*Id.* at 165.)

Dr. Trevor Lindsey, a psychiatrist who began treating Plaintiff in December 2008, completed a global assessment functioning ("GAF") test of Plaintiff on September 29, 2005, indicating that Plaintiff had a GAF score of 50.[2] (Tr. at 29.) On March 4, 2009, Dr. Lindsey completed a Request for Medical Information form used by the State of Alabama Department of Human Resources Food Stamp Program indicating that Plaintiff became permanently disabled and could not work due to the

---

[2] A GAF score of 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders, 4th ed.

September 2005 onset of bipolar disorder, obsessive compulsive disorder, panic disorder with agoraphobia, generalized anxiety disorder, and insomnia. (Tr. at 28.)

The ALJ declined to give substantial weight to Dr. Lindsey's opinions. He first determined that the GAF score is a "one-time" assessment and did not reflect longitudinal evidence. (Tr. at 29.) He also noted that the GAF score of 50 reflected Plaintiff's noncompliance with recommended treatment and substance abuse issues, because Plaintiff had been hospitalized earlier within the same month related to substance abuse and received a GAF score of 52, which is indicative of no more than moderate limitations, and she had thereafter failed to seek treatment and tested positive for marijuana and benzodiazepine. (*Id.*) Further, the food stamp form failed to persuade the ALJ for at least five reasons. First, when Dr. Lindsey completed the food stamp form in March 2009, Plaintiff was unmedicated and had seen Dr. Lindsey only twice in over three years. (*Id.*)  Plaintiff also had been repeatedly noncompliant with medications and for months had been noncompliant with therapy. (*Id.*) Second, Dr. Lindsey's diagnoses of Plaintiff did not address actual functional limitations or symptoms. (*Id.*)  Third, Dr. Lindsey offered no clinical or objective findings to support his opinions, which were inconsistent with his own previous and subsequent treatment records concerning Plaintiff. (Tr. at 667-68, 713-14.) For example, during Plaintiff's

March 2009 visit, Dr. Lindsey noted that Plaintiff's "sensorium appeared clear" and that "she spoke rationally and cohesively." (Tr. at 617.) Fourth, the ALJ suggested that Dr. Lindsey may have provided the disabling form to avoid unnecessary doctor-patient tension, since it "depart[s] substantially from the rest of the evidence of record." (Tr. at 30.) Fifth, the ALJ noted that food stamp forms are "clearly not used to fully evaluate an individual's medical condition." (*Id.*)

Plaintiff argues that the ALJ should have given substantial weight to Dr. Lindsey's opinions. According to Plaintiff, the opinions that Dr. Lindsey provided on the food stamp form prove that she has permanently been unable to work since September 2005. (Doc. 7 at 18.) Plaintiff also challenges the ALJ's criticism that she had only seen Dr. Lindsey twice in the three years leading up to his completion of the food stamp form. (*Id.* at 18.) According to Plaintiff, such criticism does not coincide with the ALJ's decision to give substantial weight to the opinions that Drs. Doody and Vargas gave after seeing Plaintiff only once. (*Id.*)

Substantial evidence supports the ALJ's clearly-articulated decision not to give great weight to Dr. Lindsey's opinions. The ALJ correctly drew a distinction between Dr. Lindsey's opinions concerning the legal consequences of Plaintiff's condition and his opinions concerning the medical consequences of Plaintiff's condition. *See Lewis*,

125 F.3d at 1440 ("[W]e . . . are concerned here with the doctors' evaluations of [the plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of [the plaintiff's] condition.") Because Dr. Lindsey provided his opinions in the context of a food stamp application, the ALJ reasonably interpreted them as concerning the legal consequences of Plaintiff's condition. Dr. Lindsey's opinion also failed to indicate functional limitations and lacked support from clinical or objective findings, further suggesting that it concerned legal rather than medical consequences of Plaintiff's condition. (Tr. at 29.) Finally, Dr. Lindsey's infrequent visits with Plaintiff undermined his opinions, especially since Plaintiff remained noncompliant leading up to those visits. (*Id.*)

Dr. Anapuma Yedla, a psychiatrist, completed a Medical Source Opinion (Mental) form on May 27, 2008, indicating that Plaintiff had "extreme" and "marked" functional limitations resulting from irritability, severe depression, and suicidal ideation. (Tr. at 525.) The ALJ gave no weight to Dr. Yedla's opinions on this form for at least three reasons. First, the form "sharply contrast[ed]" with her own treatment records concerning Plaintiff, including records dating from the same month. (Tr. at 165.) For example, Plaintiff showed entirely normal mental status in Dr. Yedla's mental status examinations in November 2007, May 2008, and August 2008.

(Tr. at 166.) During those visits, Plaintiff repeatedly denied suicidal ideations, and the evaluations found no irritability or disturbed mood. (*Id*.) Second, the ALJ noted that Dr. Yedla's assessment of Plaintiff's functional limitations as "marked" and "extreme" does not comport with her opinion that Plaintiff is capable of managing her benefits in her own best interest. (*Id*.) Third, the ALJ suggested that Dr. Yedla may have provided the medical source opinion to avoid unnecessary doctor-patient tension, since it "depart[s] substantially from the rest of the evidence of record." (*Id*.)

Plaintiff argues that the ALJ should have given substantial weight to Dr. Yedla's opinion. According to Plaintiff, Dr. Yedla's opinion did coincide with her own treatment notes. (Doc. 7 at 14-17.) Plaintiff also challenges the ALJ's skepticism concerning Dr. Yedla's motives, suggesting that the ALJ failed to meet an affirmative duty to verify the bases for Dr. Yedla's opinion. (*Id.* at 17.)

Substantial evidence supports the ALJ's decision to give no weight to Dr. Yedla's opinion. While Dr. Yedla supported her May 2008 opinion by stating that Plaintiff had significant problems including suicidal ideations, her treatment notes from November 2007, May 2008, and August 2008 indicate that Plaintiff denied suicidal ideations. (Tr. at 579, 583, 587.) Indeed, Plaintiff reported in November 2007 that she was "doing well," and in May 2008 that she was "generally doing well."

(Tr. at 48, 120.)  Additionally, Dr. Yedla's statement that Plaintiff could manage her own benefits could reasonably be seen as inconsistent with her diagnosis of Plaintiff as having "marked" limitations.  (*Id.* at 17.) Some evidence, such as Plaintiff's overdose in February 2008, may coincide with Dr. Yedla's medical source opinion. (Doc. 7 at 16.) Still, substantial evidence supports the ALJ's decision to give no weight to Dr. Yedla's opinions, as they were inconsistent with her own treatment records.

Plaintiff also incorrectly asserts that the ALJ had a duty to contact Dr. Yedla to verify the basis for her opinion. (*Id.* at 17.) Indeed, the ALJ may not "arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional," *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992), and there are situations wherein an ALJ should request clarification from a physician.  However, the ALJ is not required to do so when the record contains sufficient evidence to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (*citing Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B)).  The ALJ here neither acted arbitrarily nor substituted his own opinions for those of Dr. Yedla. The ALJ merely provided a reasoned explanation for giving no weight to Dr. Yedla's opinion and opted to rely instead upon the opinions of other medical professionals such as Drs. Doody and Vargas.

Dr. Regina Doody, one of Plaintiff's treating psychiatrists, completed a GAF test of Plaintiff on September 26, 2006, indicating that Plaintiff had a GAF score of 55. (Tr. 165.) Her findings concerning Plaintiff's memory, attention, concentration, normal thought processes, normal speech, and normal affect indicated no more than moderate functional limitations. (*Id.*) The ALJ gave substantial weight to Dr. Doody's opinions for at least two reasons. First, Dr. Doody used mental status examination findings and other objective evidence to support her assessment of Plaintiff's GAF score of 55. (*Id.*) Second, the ALJ noted Dr. Doody's thorough evaluation of both the Plaintiff and her medical history, highlighting Dr. Doody's access to Huntsville Hospital's records regarding its contact with Plaintiff. (*Id.*)

Plaintiff argues that the ALJ gave too much weight to Dr. Doody's opinions, emphasizing that Dr. Doody had never treated her prior to the 2006 assessment. (Doc. 7 at 13.) Plaintiff further suggests that Dr. Doody lacked medical records concerning Plaintiff's later hospitalizations for psychiatric services. (*Id.* at 14.)

Substantial evidence supports the ALJ's decision to give substantial weight to Dr. Doody's opinions. Although Plaintiff later underwent hospitalizations for psychiatric services, Dr. Doody nonetheless conducted a thorough examination of Plaintiff that was consistent with treatment notes from a later period, particularly from

Plaintiff's visits to the hospital from December 2008 through January 2010. (Tr. at 26.) The consistency of Dr. Doody's September 2006 opinions with subsequent treatment notes concerning Plaintiff constitutes substantial evidence supporting the ALJ's decision to give great weight to Dr. Doody's opinions.

Finally, Dr. Sherlee Vargas, a consultative examining psychologist, performed an evaluation of Plaintiff on January 5, 2007, at the request of the Disability Determination Service in Birmingham, Alabama, indicating that Plaintiff had the ability to function independently and had an unimpaired ability to understand, remember, and carry out simple instructions and only a mildly-to-moderately-impaired ability to respond to supervision and coworkers in a work setting. (*Id.* at 165, 340, 460.) The ALJ gave substantial weight to Dr. Vargas's opinions for at least two reasons. First, Dr. Vargas's opinions indicated that she had reviewed Plaintiff's medical treatment history and conducted a thorough mental status interview and examination of Plaintiff. (*Id.* at 165.) Second, the ALJ noted that Dr. Vargas's opinions corresponded with other objective evidence of record. For example, like Dr. Vargas, both Dr. Doody and Dr. Rankart, a consulting physician at the State agency, found in September 2006 and January 2007, respectively, that Plaintiff's mental illness resulted in no more than mild-to-moderate functional limitations. (*Id.* at 165.)

Plaintiff argues that the ALJ gave too much weight to Dr. Vargas's opinions. According to Plaintiff, Dr. Vargas only treated her once and was not one of her treating physicians. (Doc. 7 at 18.) Plaintiff also suggests that Dr. Vargas lacked medical records concerning Plaintiff's later hospitalizations for psychiatric services. (*Id.* at 14.)

Substantial evidence supports the ALJ's decision to give substantial weight to Dr. Vargas's opinions. Although Plaintiff underwent later hospitalizations for psychiatric services, Dr. Vargas nonetheless conducted a thorough examination of Plaintiff that was consistent with treatment notes from later in the record, particularly from Plaintiff's visits to the hospital from December 2008 through January 2010. (Tr. 26.) The consistency of Dr. Vargas's 2007 opinions with subsequent treatment notes concerning Plaintiff constitutes substantial evidence. In sum, although Dr. Doody and Dr. Vargas's evaluations occurred earlier in the time period at issue, because treatment notes from both before and after those evaluations are consistent with those evaluations, it was appropriate for the ALJ to rely on them.

Plaintiff also incorrectly asserts that the ALJ gave too much weight to Dr. Vargas's opinions because Dr. Vargas was a non-treating physician. (Doc. 7 at 15.) Within the classification of acceptable medical sources are the following different

types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . ." 20 C.F.R. § 404.1502. The regulations and case law indeed set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, as explained previously, good cause existed for the ALJ to give less weight to the opinions of two of Plaintiff's treating psychiatrists, Drs. Lindsey and Yelda. The ALJ determined that those psychiatrists' opinions were inconsistent with their own treatment records, not bolstered by the evidence, and that the evidence supported a contrary finding. It was thus not

inappropriate for the ALJ to give greater weight to the opinion of a non-treating physician, Dr. Vargas, especially when she conducted a thorough interview and examination of Plaintiff and had reviewed her medical history. *See Fries v. Comm'r of Soc. Sec.*, 196 F. App'x 827, 833 (11 th Cir. 2006) (the ALJ properly relied on an opinion from a one-time examiner and found good cause to discount a treating source opinion because it was inconsistent with the other evidence); *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012) ("The evidence supported a contrary conclusion to [the treating physician's] opinion, and the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it.").

B.      Listing 12.08 Evaluation.

Plaintiff contends that her medical and psychological profile met or equaled the requirements of section 12.08 of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, Appendix 1, 12.08, Personality Disorders. (Doc. 7 at 19.) The Eleventh Circuit has stated:

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To meet the required level of severity for these disorders, Plaintiff must meet at least three criteria, one from "Paragraph A" and two from "Paragraph B." Paragraph A criteria include deeply ingrained, maladaptive patterns of behavior, while Paragraph B criteria encompass results of those behavioral patterns including certain impairments or decompensation. *See* 20 C.F.R. § pt. 404, subpt. P, app. 1, § 12.08. More specifically, Paragraph B requires either two "marked" (i.e., more than moderate) impairments or one such impairment along with "repeated episodes of decompensation, each of extended duration" (i.e., at least three episodes within one year, or an average of once every four months, with each lasting for at least two weeks). 20 C.F.R. § 404, Subpart P, Appendix 1, 12.00(c)(4). In this case, the ALJ found that Plaintiff fails to satisfy the Paragraph B criteria because she has no more than moderate impairments and has experienced only one or two episodes of decompensation of extended duration. (Tr. at 23.)

Plaintiff argues that the ALJ failed to support with objective evidence his opinion of her limitations. (Doc. 7 at 19.) To rebut the ALJ's opinion, Plaintiff recites a litany of negative results (concerning Paragraph B) stemming from her purported maladaptive behavioral patterns (concerning Paragraph A). (*Id.* at 19-22.)

Substantial evidence in the record as a whole supports the ALJ's decision, so it must be affirmed. *See Wilson*, 284 F.3d at 1221. The ALJ first analyzed the medical opinions and treatment notes in the record and found that Plaintiff was only moderately limited and thus did not meet or medically equal the criteria of Listing 12.08. (Tr. at 22-23). For example, Plaintiff's treatment notes indicate that she was treated repeatedly for abuse of marijuana, alcohol, and Xanax, (tr. at 364-78), that she enjoyed activity and work and spent time with friends, (tr. at 159, 369), and that she was repeatedly noncompliant with recommended mental health treatment. (Tr. at 327-332.) Treatment notes also reveal that even though unmedicated, Plaintiff had normal mood, affect, orientation, and denied suicidal ideations. (Tr. at 439.) As noted previously, evaluations by Drs. Doody and Vargas also resulted in normal findings indicative of no more than moderate functional limitations. (Tr. at 165, 464.) Further, Dr. Yedla's treatment notes show that Plaintiff had a normal mental status examination in November 2007 and May 2008. (Tr. at 579-80.) Additionally, Dr. Lindsey reported in March and November 2009 that Plaintiff was adequately groomed, calm, and spoke rationally and cognitively. (Tr. at 25, 667-68.) The ALJ also considered Plaintiff's stated ability to do certain activities, including washing clothes and cooking, walking on a treadmill for an hour each day, and interacting

socially with her family, boyfriend, stepson, and other group therapy participants at a mental health center.  (Tr. at 161, 369, 506, 609.)  Because the medical evidence of record supports the ALJ's finding that Plaintiff had mental impairments, but that she was no more than moderately limited and did not meet the criteria for Paragraph B of Listing 12.08, substantial evidence supports the Commissioner's decision and it is due to be affirmed.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Lee's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with applicable law.  A separate order will be entered.

Done this 26th day of September 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]